## FIELD *et al.* v. HARDWICK & COMPANY.

1. The court did not err in overruling the general demurrer.
2. Even if no facts were sufficiently pleaded as a basis for the plaintiffs' claim of damages on the ground that the defendants had practiced fraud and had been stubbornly litigious, and if the paragraph claiming damages on those grounds should have been stricken, the overruling of the demurrer directed to this paragraph is not ground for reversing the judgment and remanding the case for another hearing, it clearly appearing that no amount was allowed as damages.
3. The verdict in favor of the plaintiffs was practically demanded by the evidence. And while there are certain inaccuracies in the charges com-

plained of, they are not of such a character as to have misled the jury upon any of the real issues in the case.

4. The admission of evidence tending to show bad faith on the part of the defendants, and that they had been stubbornly litigious, is not cause for the grant of a new trial, as no damages were allowed upon this ground.

5. The admission in evidence of a written statement of the vendor of the land, in reference to the intent and purpose of a certain instrument called an "escrow agreement," could not have injured the defendants, inasmuch as the paper should have received the construction which the evidence objected to tended to show was the proper construction, independently of any extraneous testimony.

6. Other evidence objected to as irrelevant was not of sufficient materiality to constitute grounds for a new trial.

SEPTEMBER 21, 1914.

Equitable petition. Before Judge Fite. Whitfield superior court. April 17, 1913.

C. L. Hardwick & Company brought their petition against Lee W. McKinney and E. Earle Field, alleging in substance as follows: Petitioners are the owners and holders of two promissory notes for $1,000 each, dated December 24, 1909, and being two of a series of notes given by McKinney to J. A. Farnsworth for the purchase-money of described real estate known as the Goodwood Dairy Farm and certain personalty thereon. On December 24, 1909, this real estate was bargained by Farnsworth to McKinney for $9,000, $2,200 of which was paid by McKinney in cash, the balance to be paid in partial payments at various periods, as was evidenced by promissory notes then executed and delivered. On the same date Farnsworth, McKinney, and Field entered into an "escrow agreement" in writing, stipulating that a deed to said real estate, executed by Farnsworth and delivered to Field, was to be held in trust for and delivered to McKinney when he should have paid all of the notes for the purchase-money, including petitioners' two notes. Farnsworth, McKinney, and Field each knew that the escrow or trust agreement was executed for the purpose of securing all the purchase-money notes, including petitioners' two notes. In violation of this trust agreement (the conditions thereof not having been fully executed and carried out) Field, on June 22, 1911, delivered to McKinney the deed made by Farnsworth to McKinney and held in escrow by Field, and on the same date McKinney executed and delivered to Field a warranty deed to said property, and Field executed and delivered to McKinney a bond conditioned to make title to the same to McKinney upon the payment by McKinney to Field of certain promissory

notes, a list of which, with their amounts and due dates, was set forth in the bond for title; but the plaintiffs' notes, it is charged, were purposely left out of this list with the intent to defeat the payment thereof. They further charge that the delivery of the escrow deed from Farnsworth to McKinney, the deed from McKinney to Field, and the bond for title from Field to McKinney was without consideration and with a fraudulent intention of Field and McKinney to defeat the plaintiffs' lien on the property and to prevent the collection of their notes; that Field and McKinney had actual knowledge that the plaintiffs were owners of said notes, and fully understood that the escrow agreement contemplated the payment of said notes before the deed from Farnsworth to McKinney should be delivered. McKinney is the father-in-law of Field. It is charged that Farnsworth and McKinney are insolvent; that the defendants have acted stubbornly and have forced the plaintiffs into unnecessary litigation to obtain their rights, thus damaging them in a given sum; that the property is deteriorating in value; and that McKinney is turning over the personal property to Field with the intent to defeat the collection of the plaintiffs' debt, and this will result unless a receiver is appointed. The prayer was, that McKinney be required to produce in court, in addition to the papers aforesaid, the original bond for title executed and delivered on December 24, 1909, by Farnsworth to McKinney; that the delivery by Field of the deed from Farnsworth to McKinney be declared fraudulent, null and void, except for the purpose of levy and sale under petitioners' judgment, and that the escrow agreement as originally agreed upon be reinstated, and the subsequent deed from McKinney to Field and the bond for title from Field to McKinney be declared and decreed to be fraudulent, null and void; that petitioners have judgment on their notes against McKinney for principal, interest, and attorneys' fees; that a first lien be decreed in favor of petitioners against the real estate and personalty for the full amount of their notes; that McKinney and Field be enjoined from selling, encumbering, or in anywise disposing of said real estate and personalty until this case is disposed of; that petitioners recover of defendants reasonable attorneys' fees in addition to the attorneys' fees stipulated in the notes; that a receiver be appointed; and that petitioners have such other and further relief as may seem right and proper. The "escrow agreement" referred to in the petition was as follows (omit-

ting formal parts) : "John A. Farnsworth is indebted to E. Earle Field in the sum of $5,600. Whereas said Farnsworth has this day sold to Lee W. McKinney the place known as Goodwood Dairy Farm, near Dalton, more fully described in bond for title this day executed by Farnsworth to McKinney, for the sum of $9,000, including all cattle, horses, and mules, equipment, etc., now on the farm, the consideration being paid as follows: $1,200 in cash and balance in notes maturing at different periods for three years: Now therefore, in order to secure said E. Earle Field for the indebtedness above referred to, said John A. Farnsworth has this day assigned and transferred to him notes of said McKinney in the sum of $5,600, and he agrees, as soon as definite description of said lands are in hand, to execute a warranty deed in escrow from himself to said McKinney, and also to deliver said deed to said Field to be held by him until said notes are paid, and to deliver the same to said McKinney when the said final purchase-money note or notes have been paid; and said Field on his part agrees to hold said deed in escrow and to deliver it when said conditions have been complied with." (Signed by Farnsworth and Field.)

Demurrers to the petition were filed. They were overruled, and the defendants excepted. The jury rendered the following verdict: "We, the jury, find in favor of the plaintiff $1,637.65 principal, $322.57 interest, and $163.76 attorneys' fees, and we further find the claim of plaintiff of equal dignity with the claim of E. Earle Field; further recommend and find that deed from McKinney to Field be set aside." The court thereupon entered the following decree: "It is ordered, adjudged, and decreed by the court that the escrow agreement entered into between J. A. Farnsworth and E. Earle Field on December 24th, 1909, be and the same is hereby reinstated and the status established by said escrow proceeding is hereby preserved, and the delivery of said deed in violation of said agreement is hereby declared null and void. And it is further adjudged and decreed that the deed executed and delivered by Lee W. McKinney to E. Earle Field on the 22nd day of June, 1911, be and the same is hereby declared null and void in accordance with the verdict of the jury aforesaid, and the bond for titles executed on same date by E. Earle Field to Lee W. McKinney is likewise decreed to be null and void. It is further considered, adjudged, decreed, and ordered by the court that the plaintiff C. L. Hardwick

& Co., recover of the defendant, Lee W. McKinney, the sum of $1,637.65 principal, $322.57 interest, and $163.76 attorneys' fees and $——— costs of this suit. And it is further decreed that plaintiffs have lien of equal dignity with that of E. Earle Field upon, the farm known as Goodwood Dairy Farm," describing it, and upon all of the stock, cattle, dairy tools, and equipment on said farm. The defendants made a motion for a new trial, which was overruled, and they excepted.

*Maddox, McCamy & Shumate,* for plaintiffs in error.

*C. D. McCutchen, F. K. McCutchen,* and *W. E. Mann,* contra.

BECK, J. (After stating the foregoing facts.)

1. There was no error in overruling the general demurrer to the petition. The plaintiffs were the holders of two promissory notes given for the purchase-money of land. The vendor had transferred and indorsed these notes to the plaintiffs. The vendee and the vendor were both insolvent, according to the allegations of the petition. The vendor had placed a deed to the vendee in escrow; and under the terms of a written agreement, referred to in the petition as an "escrow agreement," it was provided that the deed was to be delivered to the vendee when the final purchase-money note or notes were paid. While this does not state that the deed was not to be delivered to the vendee until "all" the purchase-money notes were paid, and the expression "until the final purchase-money notes are paid" is used, we are of the opinion that the proper construction of this is that the deed was to be held in escrow until all the purchase-money was paid. The notes fell due upon different dates. The two falling due first were those held and sued upon by the plaintiffs; and it was evidently in the mind of the vendor who signed this "escrow agreement" that when the final purchase-money note, that is, the one falling due last, should be paid, the others would have been paid also. And we do not think that, under a paper like this, the vendee of the property and the transferee of purchase-money notes other than those held by the plaintiffs, the latter being the depositary of the escrow deed, could, by the swift manipulation of documents, shake off the rights which the transferee and indorsee of the two purchase-money notes falling due first had to subject the property conveyed by the escrow deed to his demands in the proportion which it bore to the entire amount of the purchase-money notes. One can not read the history of the transaction between

Field and McKinney on June 22, 1911, without being forced to the conclusion that these two parties were of the opinion that it was the purpose of this escrow agreement to protect the other transferees of Farnsworth as well as Field, and that they would shake off the rights of the plaintiffs under the terms of the instrument called an "escrow agreement" by the execution of a series of papers which would change the status of the title to the property. And so, on the date last mentioned, June 22, 1911, before the conditions upon which the deed was to be delivered had been executed, Field, the depositary of the escrow deed, delivered the deed to McKinney, the grantee named in the same, and immediately thereafter, and on the same day, McKinney executed and delivered to Field a warranty deed to the same property; and immediately after this transaction, on June 22, 1911, Field executed and delivered to McKinney a bond for title to the same property, conditioned to make McKinney a deed upon the payment of certain promissory notes, and the notes referred to were those given by McKinney for the purchase-price of the property, with the exception of the two notes first falling due, of which the plaintiffs were the holders and upon which they are now suing. We do not think that the petition charging that these three instruments were executed on June 22, 1911, under the circumstances set forth in the petition, and that they were executed for the purpose of defrauding petitioners, should have been dismissed upon general demurrer, if in any case a transferee and indorsee of a note given for the purchase-money of land, where the vendor retains title to the property, can, by appropriate proceedings subject the land to his debt. And that he can do so has been ruled by this court. *Ray* v. *Anderson,* 119 *Ga.* 926 (47 S. E. 205).

2-6. Headnotes 2 to 6 require no elaboration.

*Judgment affirmed. All the Justices concur.*